```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
JOSE RODRIGUEZ, ET AL.,                                      :
                                     Plaintiffs,             :
                                                             :     22 Civ. 2982 (LGS)
                 -against-                                   :
                                                             :     OPINION AND ORDER
TARGET CORPORATION,                                          :
                                     Defendant.              :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

  Plaintiffs Jose Rodriguez and Sherri Morris, individually and on behalf of a putative class of others, bring this action against Defendants Target Corporation ("Target") and Lang Pharma Nutrition, Inc. ("Lang"), alleging breach of express warranty under New York and California law, violation of the New York General Business Law ("GBL") §§ 349 and 350, violation of the California's Unfair Competition Law ("UCL") on each of the "unfair," "fraudulent" and "unlawful" prongs (including violations of several underlying laws), violation of the California False Advertising Law ("FAL"), violation of the California Consumers Legal Remedies Act ("CLA") and unjust enrichment. Defendants move to dismiss all claims in the Second Amended Complaint ("SAC"). For the reasons below, the motion is granted in part and denied in part.

**I. BACKGROUND**

  The following facts are taken from the SAC and assumed to be true for purposes of this motion. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).

  Defendants market a dietary supplement product labeled "100% Wild Alaskan 1000 mg Fish Oil" (the "Product"). The Product's label asserts that it "Contains Fish: Alaskan Walleye Pollock." The Product's Supplement Facts state that each serving of two 1000-milligram

capsules contains 2000 milligrams of "Fish Oil" and 600 milligrams of "Omega-3 Fatty Acids." The side panel of the Product label contains the following paragraph:

> This unique fish oil is sourced from walleye pollock caught wild in Alaskan waters. This oil is extracted within hours to ensure maximum freshness and is pressed and purified by a family-owned American company using advanced processing technology.

Regular consumption of fatty fish, which include omega-3 fatty acids and several other nutrients, is associated with several health benefits. Fish are rich in two of the three omega-3 fatty acids most important to human health: docosahexaenoic acid ("DHA") and eicosapentaenoic acid ("EPA"). Because many people do not eat such fish regularly, fish oil containing those fatty acids is commonly used as a dietary supplement.

Fish oil traditionally has been produced by pressing and processing small, fatty fish for their omega-3-rich oil. That traditional process involves several steps to separate the oil from water and remove undesirable components and attributes. Those processes do not alter the naturally-occurring chemical structure of the triglycerides formed by the omega-3 fatty acids.

Defendants' Product is produced from walleye pollock, a larger, less fatty fish that is mainly caught or farmed for its meat. Defendants' Product is produced by processing the parts of the fish that remain after the fish is filleted, which Plaintiffs refer to as "fish offal" or "fish waste." The oil initially derived from this material is not fit for human consumption. This precursor oil is then shipped from Alaska to Ohio and undergoes a process called "trans-esterification."

Trans-esterification breaks down naturally-occurring triglycerides into free fatty acids and a free glycerol molecule. Free fatty acids are reacted with ethanol to create "fatty acid ethyl esters" ("FAEE"). This produces a product with higher concentration of

FAEE by volume than the concentration of triglycerides per volume produced by traditional methods. The fatty acid content can then be adjusted by the manufacturer to mimic that of "natural fish oil."

The FAEE that result from trans-esterification are chemically distinct from natural triglycerides and lack many of the constituent components of natural fish oil. The compounds have different molecular structures, molecular weights, chemical names and CAS Registry Numbers. The compounds have different entries in the United States Pharmacopeia ("USP") National Formulary ("USP-NF"), and their mass spectra indicate that they have different compositions. The Codex Alimentarius, a set of standards created by the United Nations Food and Agriculture Organization and the World Health Organization, also recognizes a distinction between "fish oils" and "concentrated fish oils ethyl esters." A monograph produced by the Global Organization for EPA and DHA omega-3s ("GOED") distinguishes between "Refined EPA and/or DHA Omega-3 Oil Triglycerides" and "EPA and/or DHA Omega-3 Oil Ethyl Ester Concentrates" among other kinds of "EPA and/or DHA containing product classes." U.S. Customs and Border Protection ("CBP") ruled that an FAEE product could not be classified under the section of the tariff schedule for "fish-liver oils and their factions, whether or not refined, but not chemically modified." FAEE are less readily absorbed by the body than natural fish oils, and the compounds may differ in other ways that affect their consumption.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von*

*Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 299 (2d Cir. 2022) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *accord Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 104 (2d Cir. 2022).  It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (cleaned up).

**III.    DISCUSSION**

With the exception of part of Plaintiffs' claim under the "unlawful" prong of the UCL, Defendants' motion to dismiss is denied to the extent that the remaining claims seek damages.  The claims that survive are not preempted; the SAC adequately alleges that a reasonable consumer would be misled by the Product's label; and Plaintiffs have Article III standing to seek damages for past harms.  A portion of Plaintiffs' claim under the "unlawful" prong of the UCL is impliedly preempted; Plaintiffs' unjust enrichment/quasi-contract claim is dismissed as duplicative; and Plaintiffs' request for an injunction is denied for lack of Article III standing.

### A.     Standing

#### 1. Damages to Compensate for Past Harm

The SAC adequately alleges the elements of Plaintiffs' Article III standing to seek damages for past harm: "an injury in fact that is concrete and particularized," fairly traceable to the challenged action and likely redressable by a favorable decision. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381 (2d Cir. 2021) (internal quotation marks omitted). Defendants challenge only the "injury in fact" element. Contrary to Defendants' argument, the SAC's allegations of past harm do not allege a mere "informational injury that causes no adverse effects" or "bare procedural violations divorced from any concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213-14 (2021) (cleaned up). The SAC alleges that Plaintiffs spent money on the Product that they would not have spent had they not been misled.

As discussed below, unlike in the cases Defendants cite, Plaintiffs do not seek redress for a bare statutory violation, but for allegedly deceptive marketing that tricked Plaintiffs into a purchase they would not have made at all or on the terms they made it. Plaintiffs thus allege a concrete, economic injury in the past sufficient for standing to seek damages. That is so whether or not the *future* harm alleged in the SAC is purely informational and cannot confer standing to seek an injunction. *See In re Coca-Cola Marketing and Sales Litig.*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) (relying on *TransUnion* to find that plaintiffs lacked standing to seek an injunction); *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).

#### 2. Injunction to Prevent Future Harm

The SAC's request for an injunction is struck from the SAC because Plaintiffs lack standing to seek such relief. "[T]he Second Circuit has squarely foreclosed the possibility of injunctive relief for past purchasers . . . ." *Gordon v. Target Corp.*, No. 20 Civ. 9589, 2022 WL

5

836773, at *9 n.3 (S.D.N.Y. Mar. 18, 2022) (putting a different plaintiff's lawyer on notice that such requests are frivolous and may result in Rule 11 sanctions). "[P]ast purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni*, 964 F.3d at 147. Plaintiffs' allegation that they might purchase the Product in the future is "conjectural [and] hypothetical" rather than "actual and imminent." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). No reasonable inference of a future purchase causing future injury can be drawn because Plaintiffs now know the "truth" and will not be deceived if they purchase the Product again. *Id.*

### B. Preemption

The SAC alleges that "fish oil" is not the "common or usual name" of FAEE products like the Product at issue. Contrary to Defendants' argument, those allegations do not render most of Plaintiffs' claims preempted. With the exception of one of Plaintiffs' theories of liability under the UCL, Plaintiffs' claims challenge "conduct that [allegedly] violates the FDCA" but not "*because* the conduct violates the FDCA." *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 237 (2d Cir. 2021) (internal quotation marks omitted).

#### 1. Statutory and Regulatory Background

Dietary supplements like the Product are considered "food" for all relevant purposes under the federal Food, Drug and Cosmetic Act ("FDCA"). 21 U.S.C. § 321(ff). It is unlawful to introduce misbranded food into interstate commerce. § 331(a). The FDCA grants authority to the Secretary of Health and Human Services to "promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity." § 341. Under the FDCA, food is "misbranded" if, among things, "its labeling is false or misleading in any particular." § 343(a). Additionally, "[i]f it purports to be

or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provide by [§ 341]," such food is misbranded if it fails to "conform[] to such definition and standard." § 343(g). The FDCA expressly preempts state and local requirements governing "food which is the subject of a standard of identity established under" § 341 that are "not identical to such standard of identity." §§ 343-1(a)(1), 343(g).

The regulations promulgated under the FDCA require that food packaging bear "a statement of the identity of the commodity." 21 C.F.R. § 101.3(a). That "statement of identity" must be the name specified by federal law or, if no such name is specified, "[t]he common or usual name of the food." § 101.3(b)(1)-(2). In general, a food's common or usual name "shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients," it "shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name," and the name of "[e]ach class or subclass of food" must "state[], in clear terms, what it is in a way that distinguishes it from different foods." § 102.5(a). A common or usual name "may be established by common usage or by establishment of a regulation," including but not only by "a standard of identity." § 102.5(d).

### 2. Implied Preemption

Plaintiffs' claim under the "unlawful" prong of California's UCL is impliedly preempted to the extent it rests on alleged violations of the FDCA and regulations promulgated thereunder. California's "UCL sets out three different kinds of business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the fraudulent." *Rose v. Bank of Am., N.A.*, 304 P.3d 181, 183 (Cal. 2013). The "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Id.* (cleaned up). To

the extent Plaintiffs' UCL claim rests on violations of the FDCA, that claim "exist[s] solely by virtue of the FDCA" and is not based on "traditional state tort law which predated the federal enactment[]." *Glover*, 6 F.4th at 237 (cleaned up) (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001)). Those claims are preempted because "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suits for noncompliance . . . ." *Buckman*, 531 U.S. 341, 350 n.4 (citing 21 U.S.C. § 337(a)).

However, Plaintiffs' UCL claim under the UCL's "unlawful prong" is not impliedly preempted to the extent it rests on violations of California law -- including the FAL, CLRA, and California's Sherman Law which incorporates and mirrors much of the FDC. Plaintiffs' other UCL claims and their freestanding FAL, CLRA, GBL and express warranty claims also are not impliedly preempted. Each of those claims asserts "a traditional state law cause of action that exists separately from the FDCA." *Glover*, 6 F.4th at 241. While the statutes in question may modify the elements of traditional common law fraud, each claim sounds in fraud and in the common law duty not to misrepresent the quality of goods. *See Warren v. Whole Foods Market Grp.*, 574 F. Supp. 3d 102, 112 (E.D.N.Y. 2021) (recognizing that GBL claims may be "premised on conduct that would give rise to liability under traditional common law principles" and may not "depend entirely upon an FDCA violation" (cleaned up)); *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1193 (S.D. Cal. 2021) ("In fact, district courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims and related claims under the Sherman Law are impliedly preempted under § 337(a) and *Buckman*." (cleaned up)).[1]

---

[1] Neither *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074 (C.D. Cal. 2017), nor *Chong v. Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022), is binding. In any event, their application of FDCA preemption to the GBL and the Sherman Law respectively is not on point. Both cases stand only for the proposition that the FDCA may preempt state statutes to the extent plaintiffs claim they impose FDCA standards rather broadly parallel duties.

Plaintiffs' claims are easily distinguished from the "fraud-on-the-FDA" claim addressed in *Buckman*, which is solely a creature of federal law and fully outside the bounds of traditional state regulatory power. 531 U.S. at 348. The SAC alleges that the conduct in question violates the FDCA, because otherwise the claims might be expressly preempted, as discussed below. *Glover*, 6 F.4th at 237. But unlike the cases on which Defendants rely, Plaintiffs are bringing most of their claims to enforce their own private rights, not any rights that were created by the FDCA. *Buckman*, 531 U.S. at 350 n.4; *cf. Chong*, 585 F. Supp. 3d at 1219-20 (finding Sherman Law claims preempted where they were based on technical non-compliance with regulations that parallel the FDCA, not on allegations of deception); *Somers v. Beiersdorf, Inc.*, 467 F. Supp. 3d 934, 937-40 (S.D. Cal. 2020) (finding UCL claim under "unlawful prong" based on failure to obtain FDA drug approval preempted); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 772-73 (C.D. Cal. 2019) (same where plaintiff alleged noncompliance with FDA rules but "t[ook] no position on whether the . . . representations are true or false"); *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d at 1086 (finding New York GLB § 349 and § 350 claims preempted where labeling allegedly violated FDA standard -- for which there was no parallel state-law standard -- but was not allegedly false or misleading).

### 3. Express Preemption

Plaintiffs' claims are not expressly preempted. Even assuming the preemption clause at issue applies to the Product, the SAC asserts claims that fall outside the scope of that clause.

Defendants rely on 21 U.S.C. § 343-1(a)(1) and § 343(g) for its express preemption argument. Both of those provisions apply only if a food "is the subject of a standard of identity established under" § 341. The parties agree that "there is no standard of identity for fish oil." Instead, the parties rely on regulations requiring that, in the absence of a standard of identity,

9

products must bear their "common or usual name." 21 C.F.R. §§ 101.3(a), (b)(1)-(2); 102.5(a), (d). It is not clear that 21 U.S.C. § 343-1(a)(1) preempts state laws that are inconsistent with the "common or usual name" regulations absent a "standard of identity." However, even assuming express preemption is in play, it does not apply here.

"Together, express and implied preemption under the FDCA, operating in tandem, have created what some federal courts have described as a narrow gap for pleadings." *Glover*, 6 F.4th at 237 (internal quotation marks omitted). Implied preemption bars state law causes of action that are dependent on FDCA violations, as discussed above, while express preemption requires that state law claims target "conduct that violates the FDCA." *Id.* (same). That is, the "state duties" must "parallel, rather than add to, federal requirements." *Id.* (same).

The same allegations that Defendants argue give rise to implied preemption -- that "fish oil" is not the "common or usual name" of the Product -- indicate that Plaintiffs' claims are not expressly preempted. Plaintiffs allege that using the name "fish oil" for an FAEE product is misleading in part because it is inconsistent with "common usage," and fails to "accurately identify or describe . . . the basic nature of the food or its characterizing properties or ingredients," and is "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" and "fails to distinguish[] it from different foods" -- i.e., "natural" fish oil. 21 C.F.R. § 102.5(a), (d).

Plaintiffs' allegations about the Product's "common or usual name" are plausible. The SAC alleges that several recognized authorities distinguish between "fish oil" and FAEE. In addition to alleging that the chemical structures of FAEE and natural triglycerides differ, the SAC alleges that the difference is meaningful to consumers because of reduced bioavailability.

And the SAC alleges that the Product includes several components that "fish oil" lacks, including ethanol and other compounds that show up in the mass spectra cited in the SAC.

Contrary to Defendants' argument, Plaintiffs allege differences between the Product and "fish oil" beyond mere "processing," and Plaintiffs allege that those differences result in a change in "efficacy." Defendants argue that dictionary definitions of "fish oil" could be read to encompass the Product, and that Plaintiffs' authorities should receive limited weight, but the Court cannot weigh the evidence or choose between competing inferences at the motion to dismiss stage. It is reasonable to infer from the SAC that the common or usual name of the Product should distinguish it from "fish oil" with materially different properties. Plaintiffs' claims therefore are not expressly preempted by the FDCA.

### C. Reasonable Consumer Standard

Claims under § 349 and § 350 for deceptive trade practices and false advertising have the same elements: "(1) consumer-oriented conduct, that is (2) materially misleading and that (3) plaintiff suffered injury as a result." *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020) (internal quotation marks omitted). Defendants dispute whether the SAC plausibly alleges the second element, which requires that its acts be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1198 (N.Y. 2021) (internal quotation marks omitted). "What is objectively reasonable depends on the facts and context of the alleged misrepresentations and may be determined as a matter of law or fact (as individual cases require)." *Id.* (internal quotation marks omitted). Defendants' argument is unpersuasive because the SAC plausibly alleges that a reasonable consumer would believe, mistakenly, that the

Product contains fish oil in the naturally occurring form in which it is pressed out of fish, with the same health properties and without unidentified additives.[2]

The cases cited by Defendants, while largely non-binding, are also distinguishable or supportive of Plaintiffs' position.  In *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (summary order), for example, the court expressly distinguished the case before it, involving the incidental presence of trace contaminants, with cases involving "an intentionally-added ingredient" that was "unnatural."  *Id.* at 705; *accord Hawyuan Yu v. Dr Pepper Snapple Grp.*, No. 18 Civ. 6664, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020); *see also Newton v. Kraft Heinz Foods Co.*, No. 16 Civ. 4578, 2018 WL 11235517, at *9 (E.D.N.Y. Dec. 18, 2018) (holding that a product could be considered natural where it contained "no contaminants, synthetic additives, or toxic materials or ingredients").

In the vanilla-flavoring cases, several courts concluded that claims that products were vanilla-flavored were just that -- flavoring claims -- not claims that the flavoring derived exclusively from the vanilla plant.  *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 161-62 (S.D.N.Y. 2021).  Calling a product "fish oil," by contrast, is plausibly a claim about the provenance of the oil and its nutritive properties.  That the Product derives ultimately from fish is not dispositive given the alleged difference in the production process and quality of the product.

Similarly, in the "diet" soda cases, the Second Circuit held that calling zero-calorie soda "diet" comported with common usage and federal law, even if drinking it did not facilitate weight loss.  *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200-01 (2d Cir. 2019).  Here, no federal

---

[2] Defendants seek dismissal of only Plaintiffs' GBL claims on this ground, and not the California state law claims.  There is thus no need to address whether the reasonable consumer standard applies to the California claims and whether the analysis is the same under California law.

regulation is directly on point, and Plaintiffs plausibly allege that the "common or usual name" of the Product is not "fish oil." Other cases in that line note the absence of evidence of a causal relationship between "diet" soda's ingredients and weight gain, unlike this case where the SAC cites studies identifying key differences between the Product and fish oil. *See, e.g.*, *Excevarria v. Dr Pepper Snapple Grp.*, 764 F. App'x 108, 109-110 (2d Cir. 2019) (summary order).

Defendants cite several cases finding that a representation about one ingredient actually present in a product does not imply the exclusion of other ingredients. *See, e.g.*, *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 156-60 (S.D.N.Y. Mar. 16, 2022). Those cases are inapposite because this case is about whether the key identified ingredient -- fish oil -- is what Defendants claim. Defendants' reliance on dictionaries is not dispositive either, because defining "fish oil" as, effectively, "oil from fish" begs the question: Does "oil from fish" include only the triglyceride-based oil that exists naturally within fish, or does it encompass any oily compound derived from fish. The SAC plausibly alleges the former. For the same reason, the SAC sufficiently alleges that the label, which calls the Product "fish oil," is literally untrue.[3]

Lastly, Defendants' argument that alleged technical non-compliance with FDA rules is insufficient to allege consumer confusion is unpersuasive. For the reasons discussed above that Plaintiffs' claims are neither expressly nor impliedly preempted, Plaintiffs' claims do not rise or fall based on Defendants' compliance with FDA rules. Plaintiffs allege that Defendants' misleading conduct also happens to violate FDA rules, to avoid express preemption. Plaintiffs also plausibly allege that consumers who know nothing of FDA rules would be misled by the

---

[3] The SAC does not plausibly allege, however, that a reasonable consumer would be misled by the claims that the Product is "Wild" or "Alaskan," since the SAC does not allege that these descriptors are untrue. Those claims, in context, are consistent with the fact that the fish are caught in Alaska while the oil is subsequently processed somewhere other than Alaska, particularly since the SAC alleges that even "natural" fish oil is processed to some degree.

Product's label.  Defendants' motion to dismiss is therefore denied to the extent it is based on failure to allege the "reasonable consumer" element of any claims.

### D. Breach of Warranty

Plaintiffs' breach of express warranty claims survive for the same reasons as their GBL claims, discussed above.  Defendants argue only that Plaintiffs fail to allege a warranty that was breached because the Product does contain "Wild Alaskan Fish Oil," as advertised, and contains all the health benefits consumers expect.  For the reasons discussed above, the SAC sufficiently alleges that the Product contains something other than "fish oil" and fails to provide at least some of the health benefits to same degree as "fish oil."

### E. Unjust Enrichment

Plaintiffs' unjust enrichment claim is dismissed to the extent it is based on New York law because it is duplicative of Plaintiffs' other claims.  Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *accord Apollo Mgmt., Inc. v. Cernich*, 163 N.Y.S.3d 503, 505 (1st Dep't 2022); *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473-74 (S.D.N.Y. 2020) (applying this rule to a similar food-labeling case asserting similar statutory consumer protection claims).

Plaintiffs' unjust enrichment claim is dismissed to the extent it is based on California law because it is duplicative of the claim for breach of the express warranty, which is part of the parties' contract.  *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159 (S.D. Cal. 2021). "Under California law, there cannot be a claim based on quasi contract where there exists between the parties a valid express contract covering the same subject matter." *Id.* (internal quotation marks omitted); *see also Bostick v. Gen. Motors, LLC*, No. 5:19 Civ. 2451, 2020 WL

13283478, at *9 (C.D. Cal. July 22, 2020) (distinguishing Ninth Circuit case law permitting quasi-contract claims to proceed even where they might be duplicative of non-contract claims).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' claim under the "unlawful" prong of the UCL is dismissed to the extent it rests on alleged underlying violations of the FDCA or its regulations. Plaintiffs' claims for unjust enrichment or quasi-contract are dismissed as duplicative. Plaintiffs' requests for injunctive relief on each of its other claims are dismissed. All of Plaintiffs' other claims survive to the extent Plaintiffs seek damages or other relief for past harm.

The Clerk of Court is respectfully directed to close the motion at Docket Number 43.

Dated: December 30, 2022
       New York, New York

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**